IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

DONNA VENSON                                                                                          PLAINTIFF

VS.                                              CASE NO. 3:17CV00202 PSH

NANCY A. BERRYHILL, Commissioner,
   Social Security Administration                                                      DEFENDANT

**ORDER**

      Plaintiff Donna Venson ("Venson"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Supplemental Security Income benefits (SSI), contends the Administrative Law Judge's (ALJ) decision that she is not disabled is not supported by substantial evidence. Specifically, Venson faults the ALJ for: (1) failing to consider the entirety of the record in determining her residual functional capacity ("RFC"); and (2) discrediting the opinion of Venson's treating physician with no evidence to support a finding contrary to the physician's opinion. The parties have ably summarized the medical records and the testimony given at the administrative hearings. The relevant period to be examined is from October 3, 2014, Venson's amended alleged onset date, through June 30, 2016, the date of the ALJ's decision.

      *The Administrative Hearing:*

      Venson, who was 53 years old at the time of the administrative hearing, has a high school education with past relevant work experience as a personal caregiver and cashier. Venson stated she

1

has a driver's license but limits her driving to thirty miles or less, on the advice of her doctor and physical therapist, to avoid back pain and her fingers going numb. She lives with her husband and seventeen year old twins. When asked why she is unable to work, Venson replied, "When I stand for long periods of time, my back will hurt in the lower region and the middle, and I just have to bend over. And I have to take breaks, and then I get this weird tiredness." (Tr. 49). Venson described the back pain as starting in October of 2014 and worsening since that time. Venson also identified other problems, such as a pinched nerve in her neck, herniated disc at C3, 4, and 5, headache and pain, cramps, right arm pain which affects her handwriting, dizziness, high blood pressure controlled with medication, some tiredness as a side effect of medication, arthritis in both knees, and bursitis behind the knees.

Venson named her treating physicians as Drs. Guntharp, Troxel, and Gera. According to Venson, she received 6-7 injections for back pain and her nerves were cauterized 24 times. Her physicians had not discussed surgery as an option.

Venson described her limitations to include needing breaks on a job. For example, she stated she could work for 20 minutes before needing a 30 minute break, with this pattern repeated throughout the work day. Her "bad" headaches occur about twice a month and last all day, according to Venson. (Tr. 55). She described her neck pain as shooting down all the way to her toe, which cramps. Also, she stated her neck pain causes right hand issues, dizziness when she looks up, and pain and tingling when she looks side to side. Venson estimated she could lift a gallon of milk for 2 hours out of an 8 hour work day. (Tr. 47-61).

Myrtle Johnson ("Johnson"), a vocational expert, stated Venson's past work as a personal caregiver was performed at the medium exertional level. The ALJ posed a hypothetical question

to Johnson, asking her to assume a worker of Venson's age, education, and experience, who could perform light work but could not perform frequent bending, crouching, climbing or crawling, could perform unskilled work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote and involved few variables, required little independent judgment, and where the supervision required was simple, direct, and concrete. Johnson responded that such a worker could not perform Venson's past relevant work as a personal caregiver but could perform other jobs, such as counter clerk or furniture rental consultant. A second hypothetical question was posed, assuming the worker could, among other things, perform less that the full range of sedentary work, would be unable to stand or sit for more that 30 minutes at a time, would need frequent rest breaks, could not maintain attention and concentration, and could not meet normal attendance, punctuality, and production requirements. Johnson identified no jobs for the worker described in the ALJ's second hypothetical question. (Tr. 61-64).

*ALJ's Decision:*

In his June 30, 2016, decision, the ALJ determined Venson had the following severe impairments: disorder of the back, osteoarthritis of the knees, and mood disorder (NOS). The ALJ addressed other impairments, finding Venson's high blood pressure, diabetes, and headaches were non-severe. The ALJ specifically found Venson did not have an impairment or combination of impairments that met or equaled a Listing. In reaching this conclusion, the ALJ considered Listings 1.04A, 1.02, 1.03, 1.00B2b, 12.06, and 12.04. The ALJ addressed the paragraph "B" criteria, finding Venson had mild limitations in daily activities and social functioning, moderate limitations in the ability to maintain concentration, persistence, and pace, and that she had no episodes of decompensation. The ALJ determined Venson had the RFC to perform light work with the

3

restrictions which mirrored those posed to Johnson in the ALJ's first hypothetical question. The ALJ, citing the appropriate factors, assessed Venson's subjective allegations, finding her statements "concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the evidence. . ." (Tr. 30). In reaching this conclusion, the ALJ considered the testimony at the administrative hearing, the responses submitted by Venson in a Function Report dated May 2015, and the medical history and records, with a focus on the records generated during the relevant period. The ALJ considered the opinion of treating physician Troxel, finding it was "highly inconsistent with the objective medical evidence and other evidence of record." (Tr. 32). Thus, the ALJ considered Troxel's opinion but found it was not persuasive. The ALJ assigned "great weight" to the opinions of consultative examiner Dr. Samuel Hester, who performed a mental evaluation in April 2015 and opined Venson could cope with the mental demands of basic work tasks. (Tr. 33). The ALJ also cited the absence of any aggressive treatment or referral for surgery to support his finding that Venson's neck and back problems were not as severe as suggested by her testimony. Relying upon Johnson's testimony that Venson could perform the jobs of counter clerk and furniture rental consultant, the ALJ concluded Venson was not disabled. (Tr. 22-37).

**Error in determining Venson's RFC:**[1]

Venson faults the ALJ's RFC determination finding her capable of light work with numerous

---

[1] Although Venson titles her argument as a challenge to the RFC determination, the body of her brief appears to include arguments that the ALJ erred in failing to find she did not meet a Listing. To the extent she is arguing she met a Listing, this argument is without merit. To meet a Listing, a claimant must show *medical* evidence supports her claim, and cannot rely on conclusory statements, her own testimony, or her own interpretation of the record. Venson bears the burden of presenting medical findings equal in severity to all the criteria in a Listing. *Sullivan v. Zebley*, 493 US. 521 (1990); *Johnson v. Barnhart*, 390 F.3d 1067 (8th Cir. 2004). Venson does not allege specific medical findings to establish a particular Listing was met. The argument is without merit.

restrictions. It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Venson cites her own testimony, various entries from the medical records, and Troxel's medical source statement as support for her view of the RFC. We will focus on the medical records and Troxel's opinions, since a claimant's own testimony will not undermine an RFC conclusion absent a showing of error in assessing her credibility, which is not alleged by Venson.

Venson cites the medical records of Troxel and Gera, treating physicians, as evidence that the RFC of light work with restrictions overstates her abilities. The Court has reviewed the entries for all treatment during the relevant period. The notes of Troxel and Gera clearly show Venson was dealing with neck and back pain. However, the treatment notes do not uniformly support her argument. For example, Gera, the pain management specialist, notes success with nerve blocks, injections, and radio frequency neurolysis. Just prior to the relevant period, Gera noted Venson's pain level as decreasing from 10 on a 1-10 scale to 0-3. (Tr. 436). Although the pain was returning in January 2015, Gera recorded in April that "most of the neck pain and headaches are gone." (Tr. 451[2]). Gera also reported in August 2015 that Venson was "progressing well" and that she was "some better" in November 2015. (Tr. 496, 471). In the August note Gera wrote that he told Venson she "has to walk regularly." (Tr. 496).

Troxel recorded Venson's subjective complaint in January 2015 that her pain adversely affects her work and enjoyment of life. (Tr. 510). His notes show that he stressed to Venson the

---

[2] A duplication of this entry, along with several others, is found in the record. (Tr. 437 & 455, 451 & 460, 453 & 462, and 471 & 494).

importance of diet and exercise in October 2014. (Tr. 513). It appears Venson was seen by Troxel approximately six times during the relevant period, and his notes do not contain limitations on her abilities, at least until he executed the medical source statement in May 2016. Troxel typically described Venson as "stable" and specifically noted she considered the pain stable, with the medication making it "manageable" in April 2016. (Tr. 517).

Setting aside for the moment Troxel's medical source statement, the treatment notes of Gera and Troxel establish Venson has pain issues, as well as flexion restrictions with her back. The notes do not establish these issues are at odds with the RFC conclusion of the ALJ, which included restrictions on bending, crouching, climbing, or crawling. Substantial evidence supports the RFC conclusion based upon the medical evidence of record.

We now turn to Venson's second argument, her claim that the ALJ improperly discredited the opinion of Troxel, Venson's treating physician. This argument is actually part of her first claim of RFC error. As such, we will not address it as a separate claim.

Using a checklist, Troxel opined on May 9, 2016, that Venson could stand and walk about 2 hours, sit about 3 hours, would need to change positions frequently, would need frequent, extended rest periods, would need to shift at will from sitting or standing/walking, could reach, finger, and manipulate up to one third of a work day, must avoid concentrated exposure to extreme cold, extreme heat, high humidity, fumes, odors, dust, gas, perfumes, soldering fluxes, solvents/cleaners, chemical, and sunlight. In this statement, Troxel opined Venson would miss more than 3 days of work each month due to her impairments or treatment. (Tr. 534).

As previously noted, the ALJ found Troxel's opinion "highly inconsistent with the objective medical evidence and other evidence of record." (Tr. 32). The ALJ noted the absence of limitations

6

in Troxel's own treatment notes, which include entries one week before and four days after he executed the medical source statement. (Tr. 529, 532). The ALJ also noted the relief obtained by Gera as inconsistent with the May 2016 opinion of Troxel. Ultimately, the ALJ's discounting of Troxel's opinion is supported by substantial evidence. This is primarily due to the inconsistency of Troxel's own notes and the other evidence from treating physicians, such as Gera. Although Venson claims the ALJ relied too heavily on the opinions of state agency physicians, this argument is without merit as the ALJ did not embrace state agency physicians as his basis for rejecting Troxel's opinions    The ultimate RFC determination was based upon the discounting of Troxel's opinion, and other factors, including the other medical evidence of record. We find substantial evidence supports the ALJ's RFC conclusion. The ALJ is charged with examining the entire record, and it is within his purview to weigh the evidence, opinions, and lack of evidence in reaching his conclusion. Venson's claims for relief are without merit.

The ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Venson's complaint is dismissed with prejudice.

IT IS SO ORDERED this 26th day of April, 2018.

_____
UNITED STATES MAGISTRATE JUDGE